NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4740
_____

PAPENDERIJEET SINGH,
AKA Davinderjeet Singh,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A072-018-550)
Immigration Judge:  Honorable Annie Garcy
_____

Argued July 9, 2012

Before:  AMBRO, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 19, 2012)

Alexander Bilus, Esquire
Carolyn H. Feeney, Esquire
Albert Suh, Esquire
Dechert
2929 Arch Street, 18th Floor, Cira Centre
Philadelphia, PA   19104

Frank Blechschmidt* (Argued)
University of Pennsylvania Law School
3501 Sansom Street
Philadelphia, PA  19104

* Eligible Law Student Under 3d Cir. L.A.R. 46.3 (2011)

Counsel for Petitioner

Eric H. Holder, Jr., Esquire
Thomas W. Hussey, Esquire
Terri Leon-Benner, Esquire
Jennifer A. Singer, Esquire (Argued)
Kevin J. Conway, Esquire
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC   20044

Counsel for Respondent

_____

OPINION
_____

PER CURIAM

Petitioner seeks review of the November 30, 2009 decision of the Board of

Immigration Appeals ("BIA") dismissing his appeal and denying his applications for

asylum, withholding of removal, and protection under the Convention Against Torture

("CAT").  For the following reasons, the petition for review is denied.

I.

Singh, a native and citizen of India, entered the United States on September 8,

1991, and applied for asylum, claiming persecution as a member of Akali Dal Amritsar

("ADA"), a party fighting for the rights of the Sikhs in India.  In 2008, an Immigration

Judge ("IJ") heard testimony from Singh regarding his claims for asylum, withholding of

removal, and protection under the CAT. Singh testified that, as a result of his political activism, he was twice arrested in India, taken from his home by police, interrogated about his activities with the ADA, kicked, slapped, and beaten with a wooden club. Each time, he was held by police overnight, then released without charges, after which he went to a local hospital for treatment of his injuries. After his second arrest, Singh became fearful that he would be killed by the police, so he came to the United States. He testified that, since leaving India in 1991, the police have come to his house multiple times and asked his father about Singh's whereabouts.

The IJ made an adverse credibility finding against Singh, and denied his applications on August 4, 2008. On November 30, 2009, the BIA dismissed Singh's appeal, concluding that the IJ's credibility determination was not clearly erroneous. The BIA also agreed with the IJ that Singh had failed to provide corroborating evidence for his claims. Singh's petition for review is now before us.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a). Like other factual findings in immigration proceedings, we review adverse credibility determinations under the substantial evidence standard. Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005). Where, as here, the BIA has based its decision on the IJ's adverse credibility analysis, we may review both the opinion of the BIA and the IJ. Thu v. Att'y Gen., 510 F.3d 405, 412 (3d Cir. 2007). We are bound to uphold an adverse credibility determination unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'" Chen v.

3

Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).  Because

Singh filed his application in 1991, before the passage of the REAL ID Act, the IJ's

adverse credibility finding must be based on inconsistencies that go to "the heart of the

claim, rather than to unimportant details."  Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d

Cir. 2007).

III.

As noted by the BIA, the IJ based her adverse credibility finding on inconsistent

statements Singh made regarding, among other things, the Indian police's continued

search for Singh, the location of the significant events of his claim of persecution, and

whether Singh's father was in fact arrested and tortured by Indian authorities.  The IJ also

noted that Singh failed to provide corroborating evidence from his father, who was

present both times that Singh was arrested and had also advocated at the police station for

his release.  The BIA affirmed the IJ's fact-finding and found that the IJ drew reasonable

inferences from the evidence presented with regard to credibility.  Singh argues that the

IJ exaggerated or misconstrued the alleged inconsistencies in his testimony.  To the

extent that Singh acknowledges that there are discrepancies in the record, he argues that

they are minor and do not go to the heart of his claim.  We disagree.

With respect to the statements about Singh's residence, Singh testified that he was

born in Nagal Town, lived in Mehitpur from 1977 to 1982, and then lived in Narur

village until he left India in 1991.  AR 188–89.  He also testified that he was living in

Narur when the significant events in his case took place, but Phagwara is where Singh

4

was allegedly beaten by police, and where his hospital records are from. Yet, in his asylum application (Form I-589), Singh reports Mehitpur as the place he has lived since birth. AR 190. Singh was given an opportunity to clarify these inconsistencies during the hearing, but failed to offer a good explanation as to why he never listed his Phagwara or Narur addresses on his applications. AR 191–92.

As for Singh's claim that the Indian police were looking for him as recently as 2003, the IJ correctly observed that Singh did not mention these events in his Supplemental I-589 and testified about them for the first time at his hearing. AR 209. Although Singh's oral testimony was corroborated by a letter sent from the General Secretary of the Punjab Human Rights Organization, dated October 5, 2007, Singh failed to explain adequately why these events were omitted from his Supplemental I-589, which was submitted in February 2007.[1] On appeal, Singh maintains that the IJ incorrectly characterized the details about the continuing police pursuit as a new claim; however, there is substantial evidence to support the IJ's finding that this testimony was newly introduced and, therefore, compromised Singh's credibility.

Substantial evidence also supports the IJ's findings with respect to Singh's testimony regarding the arrest and alleged torture of his father by Indian police. The letter from the Punjab Human Rights Organization states that Singh's father had been harassed and taken by the Indian police when they came looking for Singh. AR 303.

---

[1] He explained that he did not think it was necessary to mention these facts in his application until he spoke to his lawyer, who told him that he should. AR 200.

However, Singh failed to report this in his Supplemental I-589, despite testifying that he had known about his father's arrest as early as 1995. AR 200. Singh failed to explain this discrepancy adequately. He stated that, although he knew his father had been arrested, he did not know that his father had been tortured and nobody in his family had told him. AR 201–02. However, this reasoning does not adequately explain why Singh would not have mentioned at least the fact of his father's arrest in his Supplemental I-589.

The IJ also found that Singh's credibility was compromised by his failure to provide a corroborating statement from his father, who was a witness to the significant events of Singh's claim of persecution: the latter's arrests, his injuries, and the fact that the Indian police continue to inquire about him. Singh testified that his father was "sick" and that he did not want to upset his father by asking him to write a statement. AR 220–21. The IJ reasonably found this explanation to be unconvincing in light of Singh's other testimony that he keeps close contact with his father by telephone, and his admission that his father had the capacity to write a statement. AR 221.

Upon review of the record, we conclude that the IJ's adverse credibility determination was supported by substantial evidence. Singh did not testify consistently with his written application, and his testimony was internally inconsistent at some points as well.[2] Furthermore, the discrepancies the IJ relied on were not minor or isolated, or

---

[2] For example, Mr. Singh testified as someone who was very active with the ADA,

about "unimportant details." Chukwu, 484 F.3d at 189; see Gabuniya v. Att'y Gen., 463 F.3d 316, 321–22 (3d Cir. 2006). Singh failed to testify credibly about facts going to the heart of his claim: that he was persecuted by police because of his political activism and that he still has reason to fear reprisal from the police if returned to India. Singh failed to provide the IJ with convincing explanations for the discrepancies in his testimony and failed to corroborate his claims adequately. Based on the record before us, we cannot find that "any reasonable adjudicator would be compelled" to reach a contrary conclusion than that reached by the IJ and BIA in this case. Gabuniya, 463 F.3d at 321.

In addition, we find no error in the BIA's conclusion that Singh failed to meet his burden of demonstrating his eligibility for protection under the CAT. Singh failed to demonstrate that the country of India engages in torture against Sikhs or Akali Dal members, or that he would be tortured by or with the acquiescence of a public official. In fact, the IJ relied on two Government reports that contradict Singh's concern that he will be killed in an "encounter" with police. AR at 168, 226. For example, the 2007 U.S. Department of State *Country Report on Human Rights Practices* indicates that these unlawful killings, known as "staged encounter deaths," have decreased in recent years, and indeed the *Country Report* lacks any claim of Sikhs being targeted in this manner. AR at 256–66.[3]

---

and stated twice that he took part in "demonstrations," but also stated that he took part in a single demonstration. AR at 145–48.

[3] Moreover, the United Kingdom *Operational Guidance Notes for India* states that "it is [unlikely] that anyone claiming harassment based solely on being a Sikh or

Finally, Singh insists that he was denied his Due Process right to an impartial adjudicator. Our review of the agency hearing transcript compels us to reach a contrary conclusion. While the IJ did ask numerous questions of Singh, they were primarily directed to providing him with an opportunity to explain the inconsistencies in his case. It was her obligation to assure that he had such an opportunity and did not reflect any bias on her part.

*   *   *   *   *

For the foregoing reasons, the petition for review will be denied.[4]

---

previous involvement with [Akali Dal] . . . would be able to demonstrate a well-founded fear of persecution . . . . Sikh-only and [Akali Dal] activist claims should be certified as clearly unfounded." AR at 347.

[4] The Court thanks a*micus* counsel Carolyn H. Feeney, Albert Suh, and Alexander R. Bilus, of Dechert LLP, and Mr. Frank Blechschmidt, of the University of Pennsylvania Law School, for their thorough representation and skillful oral argument on behalf of Mr. Singh.